```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 10/21/10
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

———————————————————— :

DONALD PAPAY                            :

                    Plaintiff,          :          07 Civ. 3858 (LAP)

                                        :
        -against-                       :          OPINION AND ORDER

                                        :
VIRGINIA HASELHUHN AS ASSISTANT         :
EXECUTIVE DIRECTOR, AMERICAN            :
REGISTRY OF RADIOLOGIC                  :
TECHNOLOGISTS, RICHARD F. DAINES AS     :
COMMISSIONER, STATE OF NEW YORK         :
DEPARTMENT OF HEALTH, ADELA             :
SALAME-ALFIE AS DIRECTOR, STATE OF      :
NEW YORK DEPARTMENT OF HEALTH –         :
BUREAU OF ENVIRONMENTAL RADIATION       :
PROTECTION (IN HIS OFFICIAL             :
CAPACITY),                              :

                                        :
                    Defendants.         :

———————————————————— :

LORETTA A. PRESKA, Chief United States District Judge:

        Donald Plaintiff commenced this action against the American

Registry of Radiologic Technologists (ARRT) and Virginia

Haselhuhn (collectively, the "ARRT Defendants") and against

Richard F. Daines as Commissioner of the State of New York

Department of Health and Adela Salame-Alfie as Director of the

State of New York Department of Health, Bureau of Environmental

Radiation Protection (collectively, the "State Defendants").  In

his Amended Complaint, Plaintiff seeks redress for violations of

federal and state antitrust laws, due process and equal

protection violations under the U.S. Constitution, and

violations of New York's Freedom of Information Law ("FOIL").
The ARRT Defendants and the State Defendants have each filed,
pursuant to Rule 12(b)(6) of the Federal Rules of Civil
Procedure, a motion to dismiss the Amended Complaint.

For the reasons set forth in this opinion, both motions
[dkt. nos. 12 & 14] are granted.

## I.    BACKGROUND

This case is at the motion to dismiss stage, and therefore
the Court assumes all material and well-pleaded factual
allegations contained in the Amended Complaint. Ashcroft v.
Iqbal, --- U.S. --- , 129 S. Ct. 1937, 1949-50 (2009).

Plaintiff Donald Papay is a resident of New City, New York.
(Am. Compl. ¶ 3.)  The State of New York Department of Health
licenses radiologists to practice in New York and has assigned
the American Registry of Radiologic Technologists ("ARRT") to
administer tests to license Radiologic Technologists in New York
State. (Am. Compl. ¶ 9.)  As assigned, the ARRT administers the
Examination in Radiography. (Am. Compl. ¶ 10.)

Plaintiff attended a two-year Radiological program at
Harlem Hospital from October 1995 to October 1997 to prepare for
the Examination in Radiography. (Am. Compl. ¶ 12.)  Between
October 1997 and April 2004, Plaintiff took the exam seven
times. (Am. Compl. ¶¶ 13-16, 31.)  Plaintiff needed special
permission to take the examination because of a prior

2

conviction, which was reported to the ARRT Ethics Committee.
(Am. Compl. ¶ 18.)  The Ethics Investigations Coordinator of the
ARRT Ethics Committee then informed Plaintiff "that all
conditions regarding [his] alleged violations have been met."
(Am. Compl. ¶ 20.)  Plaintiff was informed that he failed each
of the seven exams by only one or two points. (Am. Compl. ¶ 23.)

Plaintiff believes that his test scores were skewed due to
the fact that he had a prior criminal history. (Am. Compl.
¶ 24.)  There are twenty questions on the exam that Plaintiff
claims should have been taken into consideration when grading
his exam and were not. (Am. Compl. ¶ 25.)  He requested copies
of the exams, test results, and answer keys used to grade these
examinations from the ARRT to determine the cause of his seven
failures, but the ARRT denied these requests, informing
Plaintiff and his attorneys that the ARRT does not release
previous forms of examinations or allow individuals to review
previous forms of examinations.  One of these letters stated in
part, "The ARRT does not release previous forms of an
examination because doing so would compromise the security of
the test questions . . . the ARRT reuses test questions." (Am.
Compl. ¶¶ 26-30.)

The ARRT website states that "new items are continuously
added to the pool" of multiple choice questions to ensure that
exams are up-to-date and that the quality of items is

continuously improving. (Am. Compl. ¶ 32.)   The website also states: "For primary examinations (Radiography, Nuclear Medicine Technology, Radiation Therapy), the content specifications are currently revised every five years." (Am. Compl. ¶ 33.)

## II.  ARRT DEFENDANTS' MOTION TO DISMISS

### A. Standard of Review

In order to survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face," Iqbal, 129 S.Ct. at 1949 (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. at 1949.  "The plausibility standard . . . asks for more than a sheer possibility that a defendant has acted unlawfully." Id.  In evaluating a motion to dismiss, a court must "view all allegations raised in the complaint in the light most favorable to the non-moving party . . . and 'must accept as true all factual allegations in the complaint.'" Newman & Schwartz v. Asplundh Tree Expert Co., Inc., 102 F.3d 660, 662 (2d Cir. 1996) (quoting Leatherman v. Tarrant Cnty. Narcotics Intelligence and Coordination Unit, 507 U.S. 163, 164 (1993)) (citation omitted).

The Court is "not to weigh the evidence that might be presented at a trial but merely to determine whether the complaint itself is legally sufficient." Goldman v. Belden, 754 F.2d 1059, 1067 (2d Cir. 1985).  Because the complaint must allege facts which confer a cognizable right of action, "'[t]he issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims.'" York v. Ass'n of the Bar of City of New York, 286 F.3d 122, 125 (2d Cir. 2002) (citing Scheuer v. Rhodes, 416 U.S. 232, 236 (1974)).

However, the Court is "not bound to accept as true a legal conclusion couched as a factual allegation." Iqbal, 129 S.Ct. at 1950.  Legal conclusions and "[t]hreadbare recitals of the elements of a cause of action" do not suffice to state a claim, as "Rule 8 . . . does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." Id. at 1949-50.

### B. Antitrust Claims

Plaintiff alleges violations of 15 U.S.C. § 1 ["The Sherman Act"] and New York's General Business Law, § 340(1) ["The Donnelly Act"].  The Sherman Act provides, "[e]very contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several States, or with foreign nations, is declared to be illegal." 15 U.S.C. § 1.

5

Under the Donnelly Act, "[e]very contract, agreement, arrangement or combination whereby a monopoly in the conduct of any business, trade or commerce or in the furnishing of any service in this state, is or may be established or maintained, or whereby competition or the free exercise of any activity in the conduct of any business, trade or commerce or in the furnishing of any service in this state is or may be restrained . . . is hereby declared to be against public policy, illegal and void." N.Y. Gen. Bus. Law § 340(1). The Donnelly Act is "modeled on the Sherman Act and should be construed in light of federal precedent." Granite Partners, L.P. v. Bear, Stearns & Co., Inc., 17 F. Supp. 2d 275, 298, (S.D.N.Y. 1998); see also Anheuser-Busch, Inc. v. Abrams, 71 N.Y.2d 327, 335 (N.Y. 1988).

Plaintiff alleges that the antitrust violation consists of New York State's designation of the ARRT as its sole agent in administering the exam that is used to determine whether a license to practice radiology should be granted to an individual. (Pl.'s Mem. in Opp'n at 19-20.) Both motions to dismiss argue that Plaintiff does not have standing to bring either a Sherman Act or Donnelly Act claim because he has not alleged an antitrust injury. See Volvo N. Am. Corp. v. Men's Int'l Prof'l Tennis Council, 857 F.2d 55, 66 (2d Cir. 1988).

To have standing under the federal antitrust laws, a plaintiff "must show more than simply an injury causally linked

6

to an antitrust violation; instead, plaintiffs must prove
antitrust injury, which is to say injury of the type the
antitrust laws were intended to prevent and that flows from
which makes defendants' acts unlawful." See Volvo N. Am. Corp.,
857 F.2d at 66 (quoting Cargill, Inc. v. Monfort of Colo., Inc.,
479 U.S. 104, 109 (1986) (internal quotation marks omitted); see
also Balaklaw v. Lovell, 14 F.3d 793, 796 (2d. Cir.1994) ("It is
now well settled in order to have standing to prosecute private
antitrust claims, plaintiffs must show more than that the
defendants' conduct caused them injury.").  "The antitrust
injury requirement obligates a plaintiff to demonstrate, as a
threshold matter, that the challenged action has had an actual
adverse effect on competition as a whole in the relevant market;
to prove it has been harmed as an individual competitor will not
suffice." Bologna v. Allstate Ins. Co., 138 F. Supp. 2d 310, 319
(E.D.N.Y. 2001) (quoting George Haug Co., Inc. v. Rolls Royce
Motor Cars, Inc., 148 F.3d 136, 139 (2d Cir. 1998)) (internal
quotation marks omitted).  "Indeed, the antitrust laws . . .
were enacted for the protection of competition, not
competitors." Id. (quoting Brunswick Corp. v. Pueblo Bowl-O-Mat,
429 U.S. 477, 488 (1977)) (internal quotation marks omitted).

    Here, Plaintiff alleges that he "was unable to utilize his
education, expertise and qualifications he toiled to achieve,
with any employer, any legal position whatsoever in New York

State since the industry is 'Monopolized' by Defendants State of New York Department of Health, Bureau of Environmental Radiation Protection and ARRT and their unlawful policies and procedures." (Am. Compl. ¶ 53.)  He claims that as a result, he has suffered "emotional distress, pain and suffering, delay in certification and advancement in career, loss of potential higher wages, embarrassment, inconvenience, lost economic opportunity, an enormous amount of financial and emotional distress, and loss of quality of life." (Id. ¶ 61.)

Professionals who are excluded from obtaining a certain credential and allege a consequential economic injury are considered "competitors" in that professional market, rather than consumers. See Daniel v. Am. Bd. of Emergency Med., 269 F. Supp. 2d 159, 176 (W.D.N.Y. 2003) (holding emergency room physicians who were denied the opportunity to take the examination for certification in emergency room medicine, which prevented them from obtaining higher salaries, failed to show "an injury the antitrust laws were intended to prevent"); Sanjuan v. American Bd. of Psychiatry & Neurology, Inc., 40 F.3d 247, 251 (7th Cir. 1994) (holding plaintiff-psychiatrists' inability to charge higher fees because they failed an oral examination for board certification did not constitute an antitrust injury).  "The claim that a practice reduces (particular) producers' incomes has nothing to do with the

8

antitrust laws, which were designed to drive producers' prices down rather than up . . . .   Indeed, it does not even state an antitrust injury." Id. at 251.

Plaintiff's objectives in this litigation do not align with the purpose of the antitrust laws. See id. at 252 ("[T]he Sherman Act is not a precursor to the Civil Rights Act of 1964. It is aimed at protecting consumers from high prices. Plaintiffs, who want to obtain a credential that will help them charge higher prices, have pleaded themselves out of court on the antitrust claim."); see also Todorov v. DCH Healthcare Auth., 921 F.2d 1438 (11th Cir. 1991) (finding neurologist who sought radiology department privileges to administer and read CT head scans to share in the supercompetitive profits of the radiologists who retained those privileges did not have standing to seek damages or injunctive relief).  Plaintiff does not specify which consumers were injured by Defendants' practices or allege any adverse effect on competition as a whole in any market and offers no case law to support his proposition that designating one agency to administer an exam used to grant a professional license on behalf of the state impedes competition in the relevant market.

Rather, Plaintiff's injury appears to be a purely personal one in that Plaintiff is now deprived of the opportunity to benefit economically from a license to practice radiology.  His

9

alleged damages are a direct result of his "inability to earn and benefit from a professional credential . . . with which [he] expect[s] to obtain greater compensation at a level resulting from the anticompetitive conduct [he] seek[s] to condemn." Daniel, 269 F. Supp. 2d at 175 (citations omitted).  The requirement of antitrust injury and standing "has been extended to plaintiffs who, as competitors in the market, seek a professional credential that will enable them to charge higher prices for their services in that market, and a request for such relief in a federal antitrust complaint negates the existence of an antitrust injury and standing requiring dismissal of the complaint." Id. at 174.[1]

Thus, Plaintiff has alleged no cognizable injury under the antitrust laws.

### C. **FOIL Claim**

Under FOIL, "[e]ach agency shall, in accordance with its published rules, make available for public inspection and copying all records, except that such agency may deny access to records or portions thereof that [fall within one of the statutory exemptions]." N.Y. Pub. Off. Law § 87(2).  The Act

---

[1] Plaintiff could argue that he is not yet in competition with radiologic technologists because he has not qualified for the necessary license. However, in Daniel, the court found no basis to distinguish for standing purposes between competitors who possess an income enhancing credential and litigants who seek access to that credential in order to compete with those who have it.  "In either case, because their goal is to gain the credential that will cause noncompetitive prices to inure to Plaintiffs' benefit, their claim for relief falls outside the ambit of antitrust protection and they lack standing." 269 F. Supp. 2d at 181.

defines "agency" as "any state or municipal department, board, bureau, division, commission, committee, public authority, public corporation, council, office or other governmental entity performing a governmental or proprietary function for the state or any one or more municipalities thereof, except the judiciary or the state legislature." N.Y. Pub. Off. Law § 86(3).

The definition of "agency" should be given its "natural and obvious" meaning, see Capital Newspapers, Div. of Heart Corp. v. Whalen, 505 N.E.2d 932, 936 (N.Y. 1987), and "FOIL is to be liberally construed and its exemptions narrowly interpreted so that the public is granted maximum access to the records of government[,]" Buffalo News, Inc. v. Buffalo Enter. Dev. Corp., 644 N.E.2d 277, 278-79 (N.Y. 1994) (internal citations omitted) (holding a not-for-profit corporation that administered loan programs and encouraged community development, though not subject to substantial governmental control over its daily operations, was still a "government entity" performing a governmental function and thus an "agency" subject to FOIL).

The only evidence offered by Plaintiff that the ARRT is an "agency" is that (1) the Department of Health for the State of New York has designated the ARRT to administer the Examination in Radiography and (2) that the ARRT administers the test to license radiologic technologists in New York State. Am. Compl. ¶¶ 9-10.  It is unlikely that these two allegations would

satisfy the standard of "agency."   Nonetheless, the Court need
not decide the issue because, even if the ARRT were an agency
subject to FOIL requests, an exemption to FOIL's record-access
provision would prevent Plaintiff from viewing his exams. See
N.Y. Pub. Off. Law § 87(2).

The ARRT Defendants argue that they are entitled to deny
Plaintiff's inspection request because the materials at issue
"are examination questions or answers which are requested prior
to the final administration of such questions." N.Y. Pub. Off.
Law § 87(2)(h).  In Social Service Employees Union, Local 371 v.
Cunningham, the court addressed whether Civil Service
examination questions and answers are "finally administered"
following their initial use and thus available for inspection
and copying by the public under FOIL.  The court held that the
determination as to when examination questions or answers have
been finally administered lies within the discretion of the
Department of Personnel of the City of New York. 437 N.Y.S.2d
1005, 1009 (N.Y. Sup. Ct. 1981).  "[T]he intent of [Section
87(2)(h)] is clear in that it seeks to protect against the
disclosure of examination questions or answers sought before the
questions are finally administered." Id. at 1009-1010.

Plaintiff alleges that the ARRT website states that "new
items are continuously added to the pool" of multiple choice
questions "to ensure that exams are up-to-date and that the

12

quality of items is continuously improving." (Am. Compl. ¶ 32.)
The website continues: "For primary examinations (Radiography,
Nuclear Medicine Technology, Radiation Therapy), the content
specifications are currently revised every five years." (Am.
Compl. ¶ 33.)  Plaintiff believes the ARRT contradicted its
website in a letter stating, "The ARRT does not release previous
forms of an examination because doing so would compromise the
security of the test questions . . . the ARRT reuses test
questions." (Am. Compl. ¶¶ 30 (omission in original).)
Plaintiff argues that this Court must accept as true the
allegation that the ARRT revises its exam questions every five
years and that, as a result, his requested documents are out-of-
date because they are more than five years old and § 87(2)(h) is
inapplicable.

      However, even if it were true that the ARRT revises its
exam questions every five years, this does not reflect a policy
not to reuse exam questions.  The ARRT can revise its exam
questions and add new ones to stay current while still recycling
old questions, and the ARRT informed Plaintiff upon his request
for his exams and test results that it does in fact reuse test
questions.  Because the agency administering the exam has made a
determination that these questions have not been finally
administered and that releasing past examinations would
compromise the security and integrity of the test questions,

                              13

this Court finds that the examinations at issue are subject to the statutory exemption and protected from release.

## D. Section 1983 Claim

To state a claim under 42 U.S.C. § 1983, the plaintiff must establish that he was "deprived of a right secured by the Constitution or laws of the United States, and that the alleged deprivation was committed under color of state law." 42 U.S.C. § 1983. "Like the state-action requirement of the Fourteenth Amendment, the state-action element of § 1983 excludes from its reach 'merely private conduct, no matter how discriminatory or wrongful.'" Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n, (quoting Am. Mfrs. Mut. Ins. Co. v. Sullivan, 526 U.S. 40, 50 (1999)). Because this Court finds that there was no deprivation of a federal right in this case and dismisses the § 1983 claim on that ground, it need not reach the question of whether the ARRT is a state actor under the statute.

### 1. Equal Protection Claim

As Plaintiff is not a member of a protected class and does not allege discrimination on that ground, his equal protection claim is governed by the Supreme Court's holding in Village of Willowbrook v. Olech, 528 U.S. 562 (2000) (per curiam). In that case, the Court held that a successful equal protection claim may be "brought by a 'class of one,' where the plaintiff alleges that [he] has been intentionally treated differently from others

14

similarly situated and that there is no rational basis for the difference in treatment." Ruston v. Town Bd. For Town of Skaneateles, 610 F.3d 55, 59 (2d Cir. 2010) (quoting Olech, 528 U.S. at 564).  As "a class of one," a plaintiff must show either that "there was no rational basis for the unequal treatment received . . . or that the [unequal treatment] was motivated by animus." O'Bradovich v. Vill. of Tuckahoe, 325 F. Supp. 2d 413, 431 (S.D.N.Y. 2004) (quoting Harlen Assocs. v. Inc. Vill. of Mineola, 273 F.3d 494, 499 (2d Cir. 2001).

Plaintiff alleges that his test scores were skewed due to the fact that he had a prior criminal history; that there are twenty additional exam questions that should have been taken into account in grading and were not; that he took and failed the exam seven times over the course of seven years; and that his "reasonable" requests to view copies of his examinations were all denied. (Am Compl. ¶¶ 24, 25, 31.)  However, Plaintiff does not allege differential treatment.  He does not allege that others "similarly situated" who took the Examination in Radiography were given access to their examinations or were afforded a different procedure of reviewing or rescoring their examinations.  He does not allege that others without a criminal record received the same score as he did on the examination and were told they passed.  He does not allege that the twenty additional questions, which he alleges should have been scored

but were not taken into account, were used in grading other people's exams.  While the Complaint was not required to identify others by name or allege actual instances where others have been treated differently, Plaintiff fails to make even the general allegation that similarly situated candidates were treated differently. See Ruston, 610 F.3d at 58.  Thus, Plaintiff's allegations do not meet the pleading requirements established by Olech for "class of one" equal protection claims.

### 2. Due Process Claim

In reviewing Plaintiff's § 1983 claim for violation of his Fourteenth Amendment due process rights, the Court applies a two-step inquiry: (1) whether Plaintiff possesses a liberty or property interest and, if so, (2) what process he is due before he can be deprived of that interest. See Ciambriello v. Cnty. of Nassau, 292 F.3d 307 (2d Cir. 2002).  Property interests are not created by the Constitution; rather, "they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law – rules or understandings that secure certain benefits and that support claims of entitlement to those benefits." Bd. of Regents of State Colls. v. Roth, 408 U.S. 564, 577 (1972).  A property interest can be much more than the actual ownership of real estate, chattels or money, see Billups v. Millet, No. 91 Civ. 6326 (DAB), 1996 WL 99399, at *4 (S.D.N.Y. Mar. 6, 1996), but a

16

property interest must be more than an expectation, id. (citing Roth, 408 U.S. at 572). "A person must have more interest than an abstract need or desire for the benefit sought." Id. (quoting Roth, 408 U.S. at 577).

Plaintiff claims he has a due process right to review his test records that stems from the Family Education Rights and Privacy Act ("FERPA") and the New York State Freedom of Information Law ("FOIL"). (Am. Compl. ¶ 38.)

### (i) FERPA

The records-access provision of FERPA reads: "No funds shall be made available under any applicable program to any educational agency or institution which has a policy of denying, or which effectively prevents" the right to inspect and review education records. 20 U.S.C. § 1232g(a)(1). Plaintiff alleges that the ARRT should be considered an educational agency because it requires accredited education for eligibility to take the Examination in Radiography. (Am. Compl. ¶ 38.) However, even assuming that the ARRT were an educational agency or institution covered by FERPA, the Court of Appeals has held that "FERPA's records-access provisions, § 1232(g)(a)(1), do not create a personal right enforceable under § 1983." See Taylor v. Vt. Dep't of Educ., 313 F.3d 768, 786 (2d Cir. 2002). Accordingly, Plaintiff may not bring a § 1983 claim based on an alleged violation of FERPA.

17

**(ii) FOIL**

The Court now turns to whether Plaintiff can establish a property interest in the requested FOIL documents. Plaintiff cannot have an entitlement to documents under FOIL because "[t]he statute does not require that documents be produced as of right, but only after request and investigation." See Billups, 1996 WL 99399, at *4 (FOIL documents are an expectation, even if awarded pursuant to court order."); O'Bradovich, 325 F. Supp. 2d at 433 ("Plaintiffs could not, as a matter of law, have a property interest in the mere expectation of receiving FOIL documents."). Furthermore, the examinations Plaintiff requested were subject to one of FOIL's specific exemptions. N.Y. Pub. Off. Law § 87(2)(h). Accordingly, access to these documents constitutes a mere expectation of Plaintiff, not an entitlement that would establish a property interest under the Due Process Clause.

Finally, even if all of Plaintiff's allegations are accepted as true, section 1983 is not a proper vehicle for bringing a FOIL claim. See Pollnow v. Glennon, 757 F.2d 496, 501 (2d Cir. 1985) ("Clearly, a violation of state law is not cognizable under § 1983."). Rather, Plaintiff's remedy for an alleged violation of FOIL is to appeal in writing within thirty days to the head, chief executive, or governing body of the entity. N.Y. Pub. Off. Law § 89(4)(a). A person denied access

to a record in an appeal determination may then seek review
pursuant to the state procedures outlined in Article 78. <u>See</u>
N.Y.C.P.L.R. § 7801 <u>et seq.</u>; N.Y. Pub. Off. Law § 89 (4)(b).

   Thus, Plaintiff's allegations do not give rise to a federal
claim under § 1983.

   **(iii) Right to Choose a Profession**

   Finally, Plaintiff claims that the defendants deprived him
of the right to make a living in his chosen profession, causing
loss of economic opportunity, financial and emotional distress,
and loss of quality of life. (Am. Compl. ¶ 38.)  The Supreme
Court has long recognized the right to earn a livelihood of
one's choosing as a right protected by the Fourteenth Amendment.
<u>See</u> <u>Lowe v. SEC</u>, 472 U.S. 181, 228 (1985) ("The Court determined
long ago that . . . it is undoubtedly the right of every citizen
of the United States to follow any lawful calling, business, or
profession he may choose.") (internal quotation marks and
citations omitted); <u>see also</u> <u>Damino v. O'Neill</u>, 702 F. Supp.
949, 952 (E.D.N.Y. 1987) (citing <u>Bell v. Burson</u>, 402 U.S. 535,
539 (1971) ("Plaintiff's license to practice medicine is a
property right which is entitled to constitutional protection
and which cannot be revoked without due process of law.")).

   However, this right is not absolute. <u>See</u> <u>Conn v. Gabbert</u>,
526 U.S. 286, 291-92 ("[T]his Court has indicated that the
liberty component of the Fourteenth Amendment's Due Process

Clause includes some generalized due process right to choose one's field of private employment, but a right which is nevertheless subject to reasonable government regulation."); Dent v. W. Va., 129 U.S. 114, 122 (1889) ("[T]here is no arbitrary deprivation of such right where its exercise is not permitted because of a failure to comply with conditions imposed by the state for the protection of society.").  In particular, courts have recognized that the right to pursue one's chosen profession is limited by the legitimate interest of the state in protecting society and ensuring public health and safety. See Damino, 702 F. Supp. at 953 ("The state's legitimate and important concern of public health and safety far outweigh any interest of plaintiff to continue his livelihood.").  Where a profession that impacts the general welfare is at issue, the state is entitled to impose rational conditions and restrictions on admission into that profession. See Lowe, 472 U.S. at 228 ("Regulations on entry into a profession, as a general matter, are constitutional if they 'have a rational connection with the applicant's fitness or capacity to practice' the profession."); Dent, 129 U.S. at 122.

In light of these principles, the state is entitled to regulate the practice of radiography and impose restrictions that are rationally related to applicants' fitness to practice the profession.  The state has reasonably relied on the ARRT to

develop and administer the examination that tests the skills and
knowledge necessary to practice as a radiologic technologist in
the State of New York.  Plaintiff himself states that he
"understand[s] the importance of the Public Health Laws
governing certification and licensure and the purpose of their
enactment, which is to ensure the health and safety of the
public and the competence of practitioners." (Pl.'s Affirmation
in Opp'n to ARRT's Mot. at ¶ 8.)  Where the opportunity to
practice a profession is denied because of failure to meet
appropriate and reasonable conditions imposed by the state,
there is no arbitrary deprivation of the right that would
constitute a due process violation.

Plaintiff further alleges that his due process rights were
violated when his test results were skewed and he was denied a
fair review of the grading method used to score his exams.
(Pl.'s Affirmation in Opp'n to ARRT's Mot. at ¶¶ 9-10.)[2]  To

---

[2] Plaintiff argues that he was not required to first bring an Article 78
proceeding in state court because "state administrative remedies need not be
exhausted where the federal court plaintiff states an otherwise good cause of
action under 42 U.S.C. § 1983." (Pl's Mem. in Opp'n at 18).  Generally,
"relief under the Civil Rights Act may not be defeated because relief was not
first sought under state law which provided a remedy." McNeese v. Bd. of
Educ. For Cmty Unit Sch. Dist. 187, Cahokia, Ill., 373 U.S. 668, 671; see
also Roach v. Morse, 440 F.3d 53, 56 (2d Cir. 2006) ("Plaintiffs suing under
42 U.S.C. § 1983 generally need not exhaust their administrative remedies . .
. exhaustion is necessary only where Congress specifically requires it,
either explicitly or implicitly.").  Though this general rule applies to two
of the three kinds of § 1983 claims that may be brought against the state
under the Due Process Clause of the Fourteenth Amendment, namely, those
involving the incorporated protections defined in the Bill of Rights and
those involving the substantive component of the clause, it does not apply in
the same fashion to the Due Process Clause's third type of protection, a
guarantee of fair procedure. See Zinermon v. Burch, 494 U.S. 113, 125 (1990).

21

determine whether a procedural due process violation has occurred, "it is necessary to ask what process the State provided, and whether it was constitutionally adequate.  This inquiry would examine the procedural safeguards built into the statutory or administrative procedure of effecting the deprivation, and any remedies for erroneous deprivations provided by statute or tort law." Zinermon v. Burch, 494 U.S. 113, 126 (1990).  Due Process is flexible, and "[a]ll that is necessary is that the procedures be tailored, in light of the decision to be made, to 'the capacities and circumstances of those who are to be heard'" to ensure they have "a meaningful opportunity to present their case." Mathews v. Eldridge, 424 U.S. 319, 349 (1976).  "The fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner." Id. at 333.

In this case, the ARRT policy permits candidates to request a rescore of their examination within fourteen days of the date the ARRT mails out the scores. (See Affidavit of Shari Jerde Ex. A (May 26, 2005 Ltr. from M. Raymond to L. Gantt)).  Plaintiff alleges that he appealed with the ARRT the decision not to

---

"A § 1983 action may be brought for a violation of procedural due process, but here the existence of state remedies is relevant in a special sense.  In procedural due process claims, the deprivation by state action of a constitutionally protected interest in "life, liberty, or property" is not in itself unconstitutional; what is unconstitutional is the deprivation of such an interest without due process of law." Id. (citing Parratt v. Taylor, 451 U.S. 527, 537 (1981)).

release his records, in accordance with FOIL's appeal

procedures. (Pl's Mem. in Opp'n at 18.)  However, the FOIL

statute then explicitly directs petitioners to Article 78. See

N.Y.C.P.L.R. § 7801 et seq.; N.Y. Pub. Off. Law § 89 (4)(b)

(review of denial of access to government records under the

Freedom of Information Law).  Thus, Plaintiff's next step, after

following the appeal procedures outlined in FOIL itself, would

be to seek review pursuant to Article 78.  Because there was a

procedure available to Plaintiff to afford him "the opportunity

to be heard at a meaningful time and in a meaningful manner," he

was not deprived of his property or liberty without due process

of law.

As Plaintiff has failed to show a violation of FOIL or

FERPA, a property right under either of these statutes, or a

procedural due process violation, he has not alleged a

deprivation of his constitutional or federal rights.  As such,

the Court grants the ARRT Defendants' motion to dismiss

Plaintiff's claims under § 1983.

Accordingly, all of Plaintiff's claims against the ARRT

Defendants are dismissed.

### III. STATE DEFENDANTS' MOTION TO DISMISS

### A. Sovereign Immunity

The Eleventh Amendment of the Constitution bars federal

actions against a state for monetary damages absent the state's

23

waiver of its sovereign immunity or an abrogation of that immunity by Congress. See Will v. Mich. Dep't of State Police, 491 U.S. 58, 66 (1989); Edelman v. Jordan, 415 U.S. 651 (1974). New York State has not waived its sovereign immunity. See Trotman v. Palisades Interstate Park Comm'n, 557 F.2d 35, 38-40 (2d Cir. 1977).  Nor has Congress abrogated the immunity of the states, including New York. See Quern v. Jordan, 440 U.S. 332, 345 (1979).

Plaintiff has sued officers of the State of New York Department of Health in their official capacities; these are considered to be actions against the State, and therefore such actions for monetary damages are also prohibited by the Eleventh Amendment. See Will, 491 U.S. at 71.  Furthermore, the Supreme Court has held that § 1367(a)'s grant of jurisdiction does not extend to claims against non-consenting state defendants. See Raygor v. Regents of the Univ. of Minn., 534 U.S. 533, 541 (2002).  Thus, this Court does not have jurisdiction under 28 U.S.C. § 1367 to hear Plaintiff's state law claims under New York General Business Law § 340 and New York State Freedom of Information Law.

The Eleventh Amendment, however, does not bar actions against state officers in their official capacities for injunctive relief, see Will, 491 U.S. at 71 n.10, or against state officers in their individual capacities, see Hafer v.

24

Melo, 502 U.S. 21, 25-27 (1991).  Thus, Plaintiff's claims against State Defendants in their official capacity for monetary damages are dismissed pursuant to Rule 12(b)(1).[3]  Plaintiff's claims against State Defendants in their official capacities for injunctive relief are addressed below.[4]

## B. Claims for Injunctive Relief

Plaintiff has failed adequately to allege an antitrust injury under 15 U.S.C. § 1, allege that State Defendants denied him equal protection of the laws in violation of the Fourteenth Amendment, or allege that State Defendants deprived him of the opportunity to make a living in his chosen profession by skewing his test results and denying him a hearing to prove his claim.[5]  See supra, Part II.  The Court now turns to Plaintiff's other

---

[3] The Court lacks subject matter jurisdiction over claims barred by the Eleventh Amendment, and therefore, such claims are appropriately dismissed pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure. See Wake v. United States, 89 F.3d 53, 57 (2d Cir. 1996).

[4] State Defendants argue that state officials are entitled to qualified immunity.  However, with the exception of judicial officers, "a public official's right to immunity, whether absolute or qualified, pertain[s] only to claims for monetary damages." Hili v. Sciarrotta, 140 F.3d 210, 215 (2d Cir. 1998); see also Hall v. Marshall, 479 F. Supp. 2d 304, 318 (E.D.N.Y. 2007) ("[N]either absolute nor qualified immunity is a defense to a claim for injunctive relief.").

[5] State Defendants also argue that Plaintiff fails to adequately plead a conspiracy, a claim gleaned from the paragraphs in the Complaint stating that Defendants violated his constitutional and federal rights "[b]y conspiring for the purpose of impeding and hindering the due course of justice, with intent to deny Plaintiff equal protection of laws" and that "as a result of their concerted unlawful denial of Plaintiff's rights, Defendants deprived Plaintiff of both his right to his liberty without due process of law and his right to equal protection of the laws, in violation of the Fifth and Fourteenth Amendments of the Constitution of the United States and 42 U.S.C. sec. 1983." (Am. Compl. ¶¶ 38c, 39).  Plaintiff does not actually cite 42 U.S.C. § 1985 or appear to substantiate this conclusory allegation with any facts to support a conspiracy and make this claim plausible; thus this claim, to the extent it exists in the Complaint, is dismissed.

theories to substantiate his due process claim: that he had a right to access his exam records pursuant to FOIL and FERPA and that by refusing this access, State Defendants deprived him of his property rights in violation of the Fourteenth Amendment. The Court considers each of these in turn.

State defendants argue that FERPA is inapplicable because in granting students a right of access to their educational records, the Act defines the term "student" as "any person with respect to whom an educational agency or institution maintains education records or personally identifiable information but does not include a person who has not been in attendance at such agency or institution." 20 U.S.C. § 1232g(a)(6).  Plaintiff is suing the State Defendants in their capacity to license radiological technologists, not an educational agency or institution he attended.  Thus, FERPA would not apply. Furthermore, as discussed above, FERPA does not create a private right of action that can be enforced through Section 1983. See Taylor, 313 F.3d at 786.  Thus, Plaintiff does not have a federal right under FERPA.

In support of his FOIL claim, Plaintiff alleges that the State Defendants had the ability to retrieve the testing records for review to determine whether or not they were properly graded. (Am. Comp. ¶ 49.)  In response, State Defendants contend that the records Plaintiff seeks are not in its possession.

26

Plaintiff himself states in the Complaint that DOH designated all its examination testing and record keeping of the Radiologic Technologies licensing exam to the ARRT. (Am. Compl. ¶ 48.)   The Committee on Open Government, which promulgates rules and regulations with respect to implementing FOIL and furnishes advisory opinions to agencies regarding the law, has stated that "the Freedom of Information Law pertains to existing records, and §89(3) states in part that an agency is not required to create a record in response to a request.  Therefore, insofar as the information . . . requested does not exist in the form of a record, the Freedom of Information Law would not be applicable." Comm. on Open Gov't FOIL-A.O.-16063.  Thus, State Defendants had no obligation under FOIL to create or produce records that it does not maintain.  Furthermore, the examination records in question would be exempt under §87(2)(h). See supra, Part II. Thus, Plaintiff has failed to show that either the ARRT defendants or the State Defendants failed to comply with FOIL.

Because Plaintiff had only a mere expectation to receive his examination records, and not an entitlement under either FERPA or FOIL, he did not have a constitutionally protected property interest in his records. See Billups, 1996 WL 99399, at *4; O'Bradovich, 325 F. Supp. 2d at 433.  Thus, Plaintiff cannot sustain a due process claim on this basis.

27

Accordingly, this Court finds that Plaintiff's Complaint fails to state a claim on which injunctive relief can be granted and grants State Defendants' motion to dismiss.[6]

## IV.  CONCLUSION

For the foregoing reasons, ARRT Defendants' and State Defendants' motions to dismiss Plaintiff's Complaint [dkt. nos. 12 & 14] are granted in their entirety.

The Clerk of the Court is hereby directed to close this case.

SO ORDERED:

DATED:     October **21**, 2010
           New York, NY

_Loretta A. Preska_
LORETTA A. PRESKA, Chief U.S.D.J.

---

[6] State Defendants make the additional argument that 42 U.S.C. § 1983 is not a separate source of rights and federal jurisdiction; rather it only confers remedies of enforcement of rights arising under the Constitution or federal law, and grants federal jurisdiction to hear such cases. See Howard v. State Dep't of Highways, 478 F.2d 581, 585 (10th Cir. 1973).  They argue that "[b]ecause Plaintiff does not assert any separate federal rights or remedies, and Plaintiff's only other federal claim under 15 U.S.C. § 1 is without merit[,] . . . Plaintiff's case should be dismissed for want of appropriate jurisdiction."  However, Plaintiff does not allege that he has separate constitutional and federal rights under § 1983; he uses § 1983 as a mechanism to bring his due process, equal protection, and FERPA claims.  The Court has jurisdiction to consider these asserted claims, in addition to Plaintiff's other federal claim under 15 U.S.C. § 1.  Therefore, Plaintiff's case is not dismissed on this ground.